# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| HUNTER DOUGLAS, INC., § | |
| *Plaintiff,* § | |
| § | Civil Action No. 4:21-cv-741 |
| v. § | Judge Mazzant |
| § | |
| VICTOR MENENDEZ § | |
| *Defendant.* § | |
| § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Victor Menendez's Motion to Dismiss (Dkt. #6). Having considered the motion and relevant pleadings, the Court finds the motion should be **DENIED.**

### BACKGROUND

Plaintiff Hunter Douglas, Inc. ("Hunter Douglas") manufactures window coverings (Dkt. #1 ¶ 1). Defendant Victor Menendez ("Menendez") is the former Vice President of Outdoor Products Division for Timberblinds, LLC ("Timberblinds"). Timberblinds is solely owned by Turnils North America, LLC ("Turnils") and managed by Custom Brands Group ("Custom Brands"), which are both solely owned by Hunter Douglas (Dkt. #9, Exhibit 1 ¶ 2).

On February 1, 2017, Menendez and Timberblinds entered into an Employment Agreement and a Loan and Repayment Agreement (Dkt. #1 ¶¶ 2, 8). The Employment Agreement permitted Timberblinds to assign its rights and obligations under the Employment Agreement "to any Affiliate" (Dkt. #1, Exhibit A § 11). The Employment Agreement defined "Affiliate" as "all persons or entities (either directly or indirectly through one or more intermediaries) controlling, controlled by, or under common control with, the entity, and all predecessors, successors, and assigns of any such persons or entities" (Dkt. #1, Exhibit A § 5.6.). Timberblinds assigned its

rights under the Employment Agreement to Hunter Douglas (Dkt. #1 ¶ 3).[1]

Additionally, pursuant to the Loan and Repayment Agreement, Timberblinds agreed to loan Menendez $150,000 subject to repayment over the course of his employment ("the Loan and Repayment Agreement") (Dkt. #1 ¶ 8).  Pursuant to a general assignment provision in the Loan and Repayment Agreement, Timberblinds assigned its rights under the Loan and Repayment Agreement to Hunter Douglas (Dkt. #1 ¶ 9).[2]

In December of 2017, Menendez sent Hunter Douglas an invention disclosure for one of his inventions, the Hem Bar for Use with Architectural Structure Covering (the "Hem Bar") (Dkt. #13, Exhibit A).  According to Hunter Douglas, when Menendez transmitted the invention disclosure to Hunter Douglas, there was an assignment of intellectual property rights under the Employment Agreement (Dkt. #9, Exhibit 1, ¶¶ 6–7).  Throughout 2018 and 2019, Menendez assisted Hunter Douglas with its patent application for, and prosecution of, the Hem Bar (Dkt. #1 ¶¶ 19–21).

On April 21, 2020, Timberlinds announced its upcoming merger with Custom Brands (Dkt. #13 at p. 2).  By January 2021, Hunter Douglas decided to discontinue the Timberblinds' Outdoor Products Division, and transition its business activity to another recently-acquired subsidiary, Progressive Screens (Dkt. #13 at p. 2).  When Hunter Douglas decided to discontinue the Outdoor Product Division within Timberblinds, Timberblinds transferred all remaining rights and obligations under the Employment Agreement and Loan and Repayment Agreement to Hunter Douglas ("2021 Assignment") (Dkt. #13 at p. 2).

On March 2, 2021, Turnils' president notified Menendez he would receive a formal role at

---

[1] The parties do not clearly set out when Timberblinds assigned its rights under the Employment Agreement to Hunter Douglas, and neither side has provided the Court with documentation of this purported assignment.
[2] Again, there is a lack of clarity on the timing of such assignment, nor do the parties attach any written evidence of this assignment.

2

Progressive Screens (Dkt. #13 at p. 2).  However, the reorganization apparently led to misunderstanding and miscommunication regarding Menendez's continued employment with any Turnils' owned company (Dkt. #13 at pp. 2–3).  Menendez's employment with Timberblinds, or any other Turnils subsidiary, ended in March of 2021 (Dkt. #13 at p. 3).

On June 15, 2021, Menendez brough an action in this Court, alleging that Hunter Douglas had recorded an assignment containing Menendez's forged signature with the United States Patent and Trademark Office ("USPTO"), based on which Hunter Douglas filed an application to patent Menendez's Hem Bar invention in its own name (the "Menendez Suit").  *See Menendez, v. Hunter Douglas Inc., et al.,* Case No. 4:21-cv-00451-ALM.  Timberblinds is not a party to the Menendez Suit.

On September 24, 2021, Hunter Douglas initiated the underlying action against Menendez for breach of contract and breach of the duty of loyalty (Dkt. #1)

On October 14, 2021, Menendez moved to dismiss Hunter Douglas' claims for lack of subject matter jurisdiction and failure to join a party pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(7) (Dkt. #6).  Hunter Douglas responded on October 28, 2021 (Dkt. #9). Menendez replied on November 4, 2021 (Dkt. #12).  Hunter Douglas filed its Sur-Reply on November 12, 2021 (Dkt. #13).

## LEGAL STANDARD

**Federal Rule of Civil Procedure 12(b)(1)**

Under Rule 12(b)(1), "a claim is properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the claim." *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012) (internal quotation marks omitted).  There are two types of Rule 12(b)(1) challenges to subject-matter

jurisdiction: facial attacks and factual attacks. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).

"In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). The pleading's allegations are presumed to be true, and "[i]f those allegations sufficiently allege a claim for recovery, the complaint stands and the federal court must entertain the suit." *Jones v. SuperMedia Inc.*, 281 F.R.D. 282, 286 (N.D. Tex. 2012) (citing *Paterson*, 644 F.2d at 523).

"A factual attack on the subject matter jurisdiction of the court, however, challenges the facts on which jurisdiction depends and matters outside of the pleadings, such as affidavits and testimony, are considered." *Oaxaca v. Roscoe*, 641 F.2d 386, 391 (5th Cir. 1981). When examining a factual challenge to subject matter jurisdiction that does not implicate the merits of plaintiff's cause of action, the district court has authority "to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Garcia v. Copenhaver, Bell & Assocs.*, 104 F.3d 1256, 1261 (11th Cir. 1997); *see also Clark v. Tarrant Cnty.*, 798 F.2d 736, 741 (5th Cir. 1986). Accordingly, the court may consider matters outside the pleadings, such as testimony and affidavits. *See Garcia*, 104 F.3d at 1261. The burden shifts to the plaintiff to prove subject matter jurisdiction by a preponderance of the evidence. *MacKenzie v. Castro*, No. 3:15-cv-0752, 2016 WL 3906084, at *2 (N.D. Tex. July 19, 2016).

A court's dismissal of a case for lack of subject matter jurisdiction is not a decision on the merits, and the dismissal does not prevent the plaintiff from pursuing the claim in another forum. *See Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977).

4

**Federal Rule of Civil Procedure 12(b)(7)**

The Federal Rules of Civil Procedure allow a district court to dismiss an action for "failing to join a party under Rule 19." FED. R. CIV. P. 12(b)(7). Rule 19 provides for the joinder of all parties whose presence in a lawsuit is required for the fair and complete resolution of the dispute at issue. FED. R. CIV. P. 19(a).

"[A] Rule 12(b)(7) analysis entails two inquiries under Rule 19." *H.S. Res., Inc. v. Wingate*, 327 F.3d 432, 439 (5th Cir. 2003). First, the Court must determine under Rule 19(a) whether a person should be joined to the lawsuit. *Id.* "If joinder is warranted, then the person will be brought into the lawsuit." *Id.* "But if such joinder would destroy the [C]ourt's jurisdiction," then the Court turns to Rule 19(b) and determines "whether to press forward without the person or to dismiss the litigation." *Id.*

A required party is one "whose joinder will not deprive the court of subject-matter jurisdiction" and either: (1) the Court "cannot accord complete relief among existing parties" or (2) disposing of the action would "impair or impede" the person's interest or "leave an existing party subject to . . . inconsistent obligations." FED. R. CIV. P. 19(a)(1).

If joinder would destroy jurisdiction, under Rule 19(b), the Court "must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." FED. R. CIV. P. 19(b). The Court shall consider:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties: (2) the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

FED. R. CIV. P. 19(b)(1)–(4).

A determination of improper joinder must be based on an analysis of the causes of action

5

alleged in the complaint at the time of removal.  *See Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 264 (5th Cir. 1995).  In this case, the burden is on Menendez, as the movant, to show that Timberblinds is a necessary and required party.  *See Sanson v. Allstate Tex. Lloyds*, 4:17-CV-00733, 2018 WL 3630136, at *1 (E.D. Tex. July 31, 2018).

## ANALYSIS

Menendez contends the Court lacks subject matter jurisdiction and that Timberblinds is an indispensable party whose absence warrants dismissal of the case (Dkt. #6).  Hunter Douglas responds the Court has subject matter jurisdiction and that Timberblinds is not an indispensable party (Dkt. #9).

The Court first addresses Hunter Douglas' assertion thar the Court lacks subject matter jurisdiction over Menendez's claims.  *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (maintaining that when a party files several Rule 12 motions, and one of which is a Rule 12(b)(1) motion, courts should first consider the jurisdictional attack).

### I.     Lack of Subject Matter Jurisdiction

Hunter Douglas invokes the Court's jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) (Dkt. #1 ¶ 4).  A corporation is "deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business."  28 U.S.C. § 1332(c)(1). Hunter Douglas is incorporated under the laws of Delaware and its principal place of business is in the State of New York (Dkt. #1 ¶ 2).  Menendez is an individual who resides in Texas (Dkt. #1 ¶ 3).

Because no person or entity on one side of the controversy shares citizenship with a person or entity on the other side of the controversy, the parties are diverse.  *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1079 (5th Cir. 2008).  Additionally, neither party contests the amount in

controversy exceeds the jurisdictional requirement. "[Plaintiff's] claim remains presumptively correct unless [Defendant] can show by a preponderance of the evidence that the amount in controversy is greater than the jurisdictional amount." *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1412 (5th Cir. 1995). Because no such showing has been made, the amount in controversy requirement is met. Thus, the requirements for diversity jurisdiction are satisfied. 28 U.S.C. § 1332.

However, Menendez argues jurisdiction does not exist pursuant to 28 U.S.C. § 1359 (Dkt. #6 at p. 7). Section 1359 deprives "[a] district court [of] jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court." 28 U.S.C. § 1359. Menendez contends all assignments between Hunter Douglas and Timberblinds are presumptively collusive, and therefore the Court lacks subject matter jurisdiction (Dkt. #6 at p. 8). Hunter Douglas responds that assignments between a subsidiary and a parent company are not presumed collusive in the Fifth Circuit and the Court has jurisdiction to hear its claims (Dkt. #9 at p. 11).

**A. Whether A Rebuttable Presumption of Collusion Applies.**

The assignment or transfer of a claim that is feigned or merely colorable, rather than absolute or genuine, and made for the sole purpose of creating diversity jurisdiction violates Section 1359 as improper or collusive and does not create federal diversity jurisdiction. *See Harrell & Sumner Contracting Co. v. Peabody Petersen Co.*, 546 F.2d 1227, 1229 (5th Cir. 1977) (finding an assignment collusive—and therefore affirming the district court's lack of subject matter jurisdiction—where a third party assigned all rights in the litigation to the plaintiff but retained a right to one-half of the proceeds).

*Kramer v. Caribbean Mills, Inc.* is the seminal Supreme Court case on collusive joinder.

7

394 U.S. 823 (1969). In *Kramer*, a Haitian corporation, Caribbean Mills, contracted with a Panamanian corporation to purchase shares of the Panamanian corporation's corporate stock. *Id*. at 824. When Caribbean Mills failed to make the required installment payments, the Panamanian corporation assigned its entire interest in the contract to Kramer, a Texas attorney. *Id*. Consideration for the assignment was $1.00. *Id*. By a separate agreement dated the same day, Kramer promised to pay back to the Panamanian corporation 95 percent of any net recovery on the assigned cause of action, "solely as a bonus." *Id*. Kramer then sued Caribbean Mills in the Northern District of Texas, alleging diversity of citizenship. *Id*. The district court denied Caribbean Mills' motion to dismiss for want of jurisdiction. *Id*. 824–25. On appeal, however, the Fifth Circuit reversed, holding the assignment was collusive and therefore jurisdiction was lacking. *Id*. at 825. Affirming the Fifth Circuit's decision, the Supreme Court found the assignment was collusive by examining the totality of the circumstances. *Id*. at 829–30.

In the years after *Kramer*, federal courts have expanded upon the Supreme Court's decision and use several factors to determine whether an assignment has been collusively or improperly made under Section 1359. *See e.g., Branson Label, Inc. v. City of Branson*, 793 F.3d 910, 915–17 (8th Cir. 2015); *Nat'l Fitness Holdings, Inc. v. Grand View Corp. Ctr., LLC*, 749 F.3d 1202, 1205 (10th Cir. 2014); *Yokeno v. Mafnas*, 973 F.2d 803, 810 (9th Cir. 1992). For assignments between a parent and a subsidiary, however, courts apply these factors with an even heightened level of scrutiny due to the close relationship between the entities. *See Prudential Oil Corp. v. Phillips Petroleum Co.*, 546 F.2d 469, 475 (2d Cir. 1976) ("The scrutiny normally applied to transfers or assignments of claims which have the effect of creating diversity must be doubled in the case of assignments between related or affiliated corporations since common ownership or the control by one of the other only serves to increase the possibility of collusion"); *see also* 15A Moore's Federal

Practice § 102.19(4)(b) (noting a heightened level of scrutiny should be applied). As a result, some courts apply a rebuttable presumption of collusion when an assignment entered into by related entities creates diversity. *McCulloch v. Velez*, 364 F.3d 1, 6 (1st Cir. 2004) (collecting cases and applying presumption).

Courts that apply a presumption of collusion reason that the approach aligns with the purpose of Section 1359. *See Yokeno*, 973 F.2d at 809 ("The federal anti-collusion statute is aimed at preventing parties from manufacturing diversity jurisdiction to inappropriately channel ordinary business litigation into the federal courts."). Dicta in an early Supreme Court decision, *Lehigh Mining & Manufacturing v. Kelly*, has also been influential: "[b]ut when the inquiry involves the jurisdiction of a Federal court—the presumption in every stage of a cause [is] that it is without the jurisdiction of a court of the United States[.]" 160 U.S. 327, 336 (1895) (dismissing for lack of jurisdiction a case action in which a Virginia corporation transferred title to lands to a Pennsylvania subsidiary which then asserted diversity jurisdiction in the federal court). Indeed, the Second Circuit used the language from *Lehigh* to justify its adoption of the presumption of collusion in an assignment between a parent and subsidiary. *Prudential Oil*, 546 F.2d at 476–77.

But not all the circuits presented with this issue have adopted the presumption. In *Herzog Contracting Corporation v. McGowen*, the Seventh Circuit rejected the presumption because the question of whether an assignment is collusive is a question of fact, and therefore receives deferential review. 976 F.2d 1062, 1066–67 (7th Cir. 1992). The *Herzog* court noted:

> Congress could if it wanted adopt a rule forbidding the conferral of diversity jurisdiction by assignment to an affiliated corporation but it has not done so and we are given no urgent reason to try to do so in its place even to the extent of creating a soft rule, that is, a presumption.

*Id*. at 1067. The Eleventh Circuit has since found such reasoning persuasive and declined to apply the presumption. *Ambrosia Coal and Const. Co. v. Pages Morales*, 482 F.3d 1309, 1314 (11th

9

Cir. 2007).

The Fifth Circuit has not addressed whether a presumption of collusion arises when there is an assignment of contractual rights between affiliated companies. As for the district courts in this circuit, the Court can find one case where a court has applied the presumption, *Funderburk Enterprises, LLC v. Cavern Disposal, Inc.*, No. A-09-CA-327 LY, 2009 WL 3101064 (W.D. Tex. Sept. 22, 2009), and another case where a court has not, *Hytken Family Limited v. Schaefer*, 431 F. Supp. 2d 696 (S.D. Tex. 2006). However, neither court explains its decision to adopt or reject the presumption.

Without guidance from within the Fifth Circuit, the Court finds the reasoning from the Seventh and Eleventh Circuits persuasive. First, this case involves an assignment by a subsidiary to a parent, rather than the reverse. In *Ambrosia Coal*, the Seventh Circuit did not apply the presumption to an assignment by a subsidiary to an existing parent company. 482 F.3d at 1314. By contrast, the Second Circuit held the presumption applies where a parent corporation assigns its claims to a subsidiary whose sole purpose is to litigate the assigned claim. *Prudential*, 546 F.2d at 475. The Eleventh Circuit highlighted the difference in the types of assignments in its reasoning for not applying the presumption. *Ambrosia Coal*, 482 F.3d at 1314. This Court finds the Eleventh Circuit's decision persuasive given the similar factual scenarios. Second, as the Seventh Circuit pointed out, Congress could have adopted a rule or presumption against creating diversity jurisdiction through assignment, but it has not. *Herzog*, 976 F.2d at 1067. The Court thus declines to apply the presumption of collusion.

In declining to apply the presumption, the Court does not automatically disregard the language or policy of Section 1359. A rigorous analysis of the 2021 Assignment using the traditional factors and applying a heightened level of scrutiny ensures the policy of Section 1359

is upheld. *See Gross v. Houghland*, 712 F.2d 1034, 1037 (6th Cir. 1983) ("By enacting Sec. 1359, Congress sought to assure that ordinary contract and tort litigation is not diverted to the federal courts by litigants using devices to create the appearance, but not the substance, of federal diversity jurisdiction."). The Court will proceed in its analysis with the traditional factors used to evaluate whether an assignment was collusive or improper for purposes of Section 1359.

### B. Whether the 2021 Assignment Is Improper or Collusive

Federal courts apply some or all of the following factors to determine whether an assignment has been collusively or improperly made under Section 1359: (1) whether the assignee had any previous connection to the assigned claim; (2) whether the assignee has any assets other than the assigned claim and has any business functions other than pursuing the litigation; (3) whether there was meaningful or merely nominal consideration for the assignment; (4) whether the timing of the assignment suggests it was primarily executed to secure federal diversity jurisdiction; (5) whether the assignor retains any control or influence over the conduct of the litigation or the assignee's attorney; (6) whether the assignor retains any interest in the outcome of the litigation; (7) whether the assignment was motivated, at least in part, by a desire to create diversity jurisdiction; and (8) the extent the party asserting diversity jurisdiction can rebut any claim of collusion by asserting a legitimate business purpose for the assignment. *Branson Label*, 793 F.3d at 915–17; *Nat'l Fitness Holdings*, 749 F.3d at 1205 ; *Yokeno*, 973 F.2d at 810; *Hytken*, 431 F. Supp. 2d at 699–700. The Court now turns to the first factor in the analysis.

### 1. Previous Connection to the Assigned Claim

The first factor to consider is whether the assignee has had any previous connection to the assigned claim. "If the assignee possessed a previous interest or connection to an assigned claim, it is less likely that an assignment was collusive." *Funderburk*, 2009 WL 3101064, at *9.

11

Hunter Douglas asserts this factor weighs against a collusion finding because Hunter Douglas possessed significant previous interest in the assigned claim (Dkt. #9 at p. 13). Specifically, Hunter Douglas points to the $150,000 loan paid to Menendez from Hunter Douglas' bank account and a letter sent by Hunter Douglas' president to Menendez on March 30, 2021, informing Menendez the loan was immediately due and payable (Dkt. #9 at p. 13). Menendez replies Hunter Douglas has not demonstrated a pre-assignment connection to the claims in its Complaint (Dkt. #12 at p. 5).

Usually, courts find an assignee has no prior connection to a claim where the assignee is a corporation created mere days before the commencement of a lawsuit. *Branson Label*, 793 F.3d at 918 (noting assignee-corporation was created only days before the lawsuit was filed); *Greater Dev. Co. of Conn. v. Amelung*, 471 F.2d 338, 339 (1st Cir. 1973) (observing that a diverse plaintiff company was formed and assigned a legal interest merely four hours before suit was filed); *Hytken*, 431 F. Supp. 2d at 701. While Timberblinds and Menendez were the only parties to the Employment Agreement and Loan and Repayment Agreement, Hunter Douglas and its subsidiaries have at all relevant times owned and controlled Timberblinds. Each of these entities have been in existence well before the commencement of this litigation and had some connection to Menendez. Thus, the Court finds this factor does not support a finding of collusion.

### 2. Assignee's Assets and Other Business Functions

Hunter Douglas continues to manufacture window coverings (Dkt. #1 ¶ 1), thus its sole purpose is not to merely pursue this litigation. *Contra Branson Label*, 793 F.3d at 917 (only business activity of assignee was litigating the action). In fact, the assignor is the party who has ceased all business functions, rather than the assignee.

However, the Court lacks evidence regarding Hunter Douglas' other assets. The Court is

aware of at least one other subsidiary, and so the Court could infer there are assets other than the legal rights asserted here. But given the heightened scrutiny to be applied, the Court declines to make such an inference. *Cf. Toste Farm Corp. v. Hadbury, Inc.*, 70 F.3d 640, 645 (1st Cir. 1995) (recognizing partnership interest and bank account containing around $200,000 was transferred to assignee, but nevertheless deeming it as a "make-weight" in context).

While Hunter Douglas has other business functions, when balanced against the lack of evidence regarding its assets, the Court finds this factor is neutralized and neither supports nor contradicts finding the 2021 Assignment was collusive or improper.

### 3. Consideration

Hunter Douglas argues that, in exchange for the assignment of intellectual property and contractual rights, it assumed the costs of patent review, application, and issue fees from 2017 to 2021. (Dkt. #9, Exhibit 1 ¶ 9). Hunter Douglas also contends Timberblinds "received the benefits of an implied license without bearing the cost of prosecution" (Dkt. #9 at p. 13). Menendez argues Hunter Douglas had assumed the costs of prosecuting the Hem Bar patent as early as 2018, well before the 2021 Assignment, thus such consideration was nominal (Dkt. 12 at p. 4).[3]

In *Kramer*, consideration for the collusive assignment was $1.00. 394 U.S. at 824. In *Funderburk*, a court found the transfer of allegedly multi-million dollar claims in exchange for $100 was "plainly inadequate," and thus suggested the assignment was not proper. 2009 WL 3101064 at *8. Finally, consideration of $10 has been held to be nominal or nonexistent consideration which supports a finding of an improper or collusive assignment. *Hytken*, 431 F. Supp. 2d at 700. While the costs associated with prosecuting a patent for four years are not as

---

[3] While Menendez broadly asserts *all* assignments between Timberblinds and Hunter Douglas were collusive, his arguments focus solely on the 2021 Assignment. Thus, the Court will evaluate the 2021 Assignment for collusion and impropriety.

13

insubstantial as $1, $10, or $100, merely continuing with the normal course of business does not constitute consideration for the 2021 Assignment. *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 93 (5th Cir. 1995) (applying Texas law) (agreeing to do what one is already bound to do is insufficient consideration). Therefore, this factor supports a finding of an improper and collusive assignment.

### 4. Timing

Hunter Douglas contends any and all assignment were made well before litigation (Dkt. #9 at p. 15). Menendez responds that there was prolonged disagreement concerning Menendez's position with Timberblinds, and the 2021 Assignment was made in anticipation of prospective litigation (Dkt. #12 at p. 7).

In *Hytken*, the assignee-corporation was created one day before suit was brought. *Hytken*, 431 F. Supp. 2d 701. Likewise, in *Kramer*, the assignee brought suit "soon" after the assignment. 394 U.S. at 824. Typically, "[c]ourts have held that the making of an assignment on or near the day a complaint is filed serves as an indication that the assignment was entered into for the purpose of manufacturing jurisdiction." *Shamis v. Ambassador Factors Corp.*, No. 95-CV-9818, 1997 WL 473577, at *11 (S.D. N.Y. Aug. 18, 1997); *see also Branson*, 793 F. 3d at 917. Menendez brought suit roughly six months after the 2021 Assignment, which does not fit the typical pattern wherein courts are inclined to find an assignment collusive or improper. Thus, the Court finds this factor does not support a finding of collusion.

### 5. Legitimate Business Reason

Hunter Douglas contends this factor supports the validity of the assignments because the legitimate business purpose was to "make more efficient use of the two entities' resources" (Dkt. #9 at p. 14). Menendez asserts Hunter Douglas' assertions are conclusory and do not demonstrate

a legitimate business reason for the assignment (Dkt. #12 at p. 6).

Hunter Douglas merged with another company in April of 2020, and the merger necessitated re-organization of the existing business structure (Dkt. #13 at p. 2). Part of that re-organization included the discontinuance of Timberblinds' Outdoor Products Division. When Hunter Douglas decided to discontinue the Outdoor Product Division within Timberblinds, Timberblinds transferred all remaining rights and obligations under the Employment Agreement and Loan and Repayment Agreement to Hunter Douglas (Dkt. #13 at p. 2). The Court finds Hunter Douglas expressed legitimate business reasons for the 2021 Assignment, and the 2021 Assignment was not made for a purely legal or tactical purpose. *Contra Harrell*, 546 F.2d at 1229. This factor, therefore, does not support a finding of collusion or impropriety.

### 6. Control Over the Litigation

The next factor is whether the assignor exercises any control over the conduct of the litigation. Hunter Douglas points to Timberblinds' non-involvement in this suit to support its contention the assignments were not collusive (Dkt. #9 at p. 15). Menendez concedes this factor is neutral, or only weighs slightly in favor of finding the 2021 Assignment was proper (Dkt. #12 at p. 7). Due to Timberblinds' non-existent role in this litigation, this factor does not support a finding of collusion. *Hytken*, 431 F. Supp. 2d at 702.

### 7. Assignor's Interest in the Action

Hunter Douglas contends this factor weighs against a finding of collusion because Timberblinds will not receive a portion of any recovery in this suit (Dkt. #9 at p. 16). Menendez responds that Hunter Douglas controls Timberblinds accounts and finances, thus this factor warrants minimal consideration (Dkt. #12 at p. 7). Because there is nothing in the record to indicate any recovery will go to anyone other than Hunter Douglas, the Court finds this factor does

not support a finding of collusion. *Hytken*, 431 F. Supp. 2d at 702.

### 8. Motivation

The final factor is whether the motivation for the 2021 Assignment was to manufacture federal diversity jurisdiction. As mentioned previously, Hunter Douglas expressed legitimate business reasons for the 2021 Assignment. Moreover, the 2021 Assignment occurred months before any litigation was brought pursuant to these underlying facts. No one has presented any evidence of any other motive for the 2021 Assignment, let alone that Hunter Douglas' motive was to create diversity jurisdiction. *Contra Kramer*, 394 U.S. at 828 (attaching significance to the assignee's candid admission "that the assignment was in substantial part motivated by a desire . . . to make diversity jurisdiction available"); *Yokeno v. Mafnas*, 973 F.2d 803, 810 (9th Cir. 1992) (taking "particular note" of an assignee's statement that "an alternate motive for the assignment was to gain a federal forum where he could obtain a speedier resolution" (internal quotation marks omitted)). The Court does not find the motivation for the 2021 Assignment was to create diversity jurisdiction. Thus, this factor does not support a finding of collusion.

### 9. Totality of the Circumstances

Having analyzed whether the 2021 Assignment was improper or collusive using the traditional factors, the Court has found only one factor supports a finding of collusion, one factor is neutral, and six factors support finding the 2021 Assignment was valid and proper. Thus, the Court does not find the 2021 Assignment was for the purpose of creating federal diversity jurisdiction in violation of 28 U.S.C. § 1359. Therefore, the Court retains jurisdiction over the dispute. The Court now turns to whether Timberblinds is an indispensable party to this suit.

## II. Indispensable Party

Menendez asks the Court to dismiss the suit for failing to join Timberblinds, alleging that

it is an indispensable party (Dkt. #6 at p. 11). Hunter Douglas asserts that Timberblinds is not a necessary party (Dkt. #9 at p. 19).

This first step in a Rule 19 analysis is to determine whether the absent party, in this case Timberblinds, is a necessary party. FED. R. CIV. P. 19(a). If Timberblinds is a necessary party, the Court must then determine whether joinder of Timberblinds is feasible. Joinder is feasible if Timberblinds can be joined without destroying subject matter jurisdiction.[4] If joinder is not feasible, then the Court must determine, using a balancing test, whether in equity and good conscience the case should proceed without Timberblinds or be dismissed. FED. R. CIV. P. 19(b). The Court now turns to whether Timberblinds is a necessary party.

Rule 19(a) provides the basis for the first step in this analysis. It states:

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if: (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

FED. R. CIV. P. 19(a). After consideration, the Court finds that Timberblinds is not a necessary party under Rule 19(a).

Menendez contends the resolution of Hunter Douglas's claims in this action are "inseparably intertwined with Menendez's claims against Timberblinds" (Dkt. #6 at p. 11). Assuming this is a reference to the first prong of Rule 19(a), the Court is not swayed by an

---

[4] Timberblinds is a limited liability company. The citizenship of an unincorporated entity is determined by the citizenship of all of its members. *Harvey*, 542 F.3d at 1080. Without providing a list of Timberblinds' members or their respective citizenship, Menendez makes the conclusory statement that "joining Timberblinds in this action would destroy diversity" (Dkt. #6 at p. 12). Thus, the Court lacks the necessary information to determine whether Timberblinds' joinder is feasible. However, because the Court has determined Timberblinds is not a necessary party, it need not reach the question of feasibility.

argument that only vaguely gestures at Rule 19's language. "The definition of 'complete relief' under Rule 19(a)(1) refers to relief as between the persons already parties, not as between a party and the absent person whose joinder is sought." *Ortiz v. A.N.P., Inc.*, 10-CV-917, 2010 WL 3702595, at *4 (S.D. Tex. Sept. 15, 2010). Whether Timberblinds is part of the action does not bear on Menendez's potential liability to Hunter Douglas for the damages, if any, it may owe.

Menendez further asserts that without Timberblinds' joinder in this case, he will be precluded "from seeking redress for his claims against Timberblinds in state court," and even a judgment in his favor "would be inadequate as it would not remedy the damages and injuries caused by Timberblinds' conduct" (Dkt. 6 at p. 12). Menendez has not explained what inconsistent obligations he may be subject to or shown how he may be exposed to contradictory obligations through a successful defense in federal court. Inconsistent obligations occur when an existing party cannot comply with one court's order without breaching the order of another court that pertains to the same incident. *Inmobiliaria Axias, S.A. de C.V. v. Robles Intern. Serv., Inc.*, No. EP-07-CA-00269-KC, 2007 WL 2973483, at *6 (W.D. Tex. Oct. 11, 2007) (citations omitted). Unlike a risk of inconsistent obligations, a risk that a defendant who has successfully defended against a party may be found liable to another party in a subsequent action arising from the same incident does not necessitate joinder of all the parties. *Id*. Menendez's conclusory assertions merely reflect a risk of inconsistent adjudications or results, which does not necessitate Timberblinds' joinder in this action.

Moreover, Menendez is a party before this Court in several pending lawsuits. First, in the Menendez Suit, wherein Menendez neglected to sue Timberblinds or add Timberblinds as a party, No. 4:21-cv-00451, thus undercutting his arguments that the subsidiary is a necessary party. Second, Menendez filed a state court petition in Collin County, Texas against both Hunter Douglas

and Timberblinds ("State Suit") (No. 4:20-cv-914, Dkt. #1). In his State Suit petition, Menendez brings substantially similar claims to those contained in his current complaint (No. 4:20-cv-914, Dkt. #1, Exhibit 2), and the claims alleged in in the Menendez Suit complaint (No. 4:21-cv-00451, Dkt. #1). Menendez's state court action weakens his argument that he will be prevented from seeking redress in state court.[5] The Court, therefore, does not find Timberblinds is a necessary party to this litigation under Rule 19(a).

Menendez further argues Timberblinds is a necessary party because it is a subsidiary of Hunter Douglas (Dkt. #6 at p. 12). Menendez relies on the Fifth Circuit's decision in *Harrell & Sumner Contracting Co., Inc. v. Peabody Peterson Co.* a general contractor subcontracted with two other joint venturers to perform excavation work. 546 F.2d at 1228. Eventually, suit was brought against only the general contractor for damages arising from the excavation work. *Id*. The Fifth Circuit held the diversity-destroying subcontractor was a co-joint obligee and thus was an indispensable party under principles of partnership law. *Id*. at 1229. Thus, *Harrell* is readily distinguishable from the case at bar. First, principles of partnership law are not at issue in this breach of contract case. Second, Timberblinds assigned its rights under any of the agreements and thus ceased to be a joint obligee of Menendez's contractual obligations. Thus, Menendez's reliance on *Harrell* is misplaced.

Menendez also points to *Dernick v. Bralorne Resources, Ltd.* (Dkt. #12 at p. 8), which the Court also does not find persuasive. There, the Fifth Circuit noted that "failure to join the subsidiary" when it was the primary participant in the events giving rise to the lawsuit "would be improper." 639 F.2d 196, 199 (5th Cir. 1981). However, such statement was made in dicta when discussing the unconvincing nature of the caselaw the parent corporation relied upon in its briefing.

---

[5] The Court also notes Menendez's various filings have begun to ring of gamesmanship. The Court would caution both parties not to waste judicial time or resources.

19

*Id*. Even more significantly, the Court ultimately found that the subsidiary was not an indispensable party to the action. *Id*. In making this decision, the Court relied heavily on the fact that the parent company was the principal actor in the case. Indeed, the parent company "completely control[led]" the subsidiary, the management of the parent and subsidiary were "exactly the same," and the directors of the parent "determine[d] the policies" for the subsidiary. *Id*. at 198. Even more so, the subsidiary was characterized as "the vehicle through which [the parent company] carries out its activities in the United States." *Id*. Like the parent company in *Dernick*, Hunter Douglas completely controls Timberblinds, the leadership is the same, and Timberblinds' daily operations are funded from Hunter Douglas' bank account. Thus, even putting aside the fact that *Dernick* did not deal with an assignment, *Dernick* arguably offers more support for Hunter Douglas's position than Menendez's. Aside from the one sentence of dicta, the facts and holding align more with Hunter Douglas's position than Menendez. Thus, the Court is not constrained by the Fifth Circuit's statement and is not persuaded to alter its finding.

Accordingly, Timberblinds is not an indispensable party to this litigation and the Court need not dismiss the case.

## CONCLUSION

It is therefore **ORDERED** that Defendant Victor Menendez's Motion to Dismiss (Dkt. #6) is **DENIED.**

**IT IS SO ORDERED.**

SIGNED this 16th day of March, 2022.

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE